UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| ALDO STEVE GUERRERO GONZALEZ, | ) ) ) | |
| Petitioner, | ) ) | Civil Action No. 3:26-CV-298-CHB |
| v. | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| SAMUEL OLSON, *et al.*, | ) ) ) | |
| Respondents. | ) | |

*** *** *** ***

This matter is before the Court on the First Amended Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief ("Petition for Writ of Habeas Corpus"), [R. 5], filed on April 24, 2026 by Petitioner Aldo Steve Guerrero Gonzalez.[1] Therein, Petitioner alleges that Respondents—which include Samuel Olson, Chicago Filed Office, U.S. Immigration and Customs Enforcement ("ICE"), and Jeff Tindall, Oldham County Jail—have detained him in violation of the Immigration and Nationality Act (hereinafter, "INA") and the Fifth Amendment's Due Process Clause. [R. 5, pp. 14–15]. The Court issued an Order to Show Cause, [R. 7], on April 27, 2026, setting an evidentiary hearing date and establishing a briefing schedule for the parties. In response, the parties submitted briefs, [R. 10 (Respondents' Response); R. 12 (Petitioner's Reply)], and filed a joint motion to forego the evidentiary hearing. [R. 9]; *see also* [R. 11]. The matter has thus been fully briefed and is ripe for review. For the reasons that follow, the Court will grant Petitioner's Petition for Writ of Habeas Corpus.

---

[1] Petitioner filed his original petition on April 23, 2026, [R. 1], and was permitted an opportunity to amend to name the respondents by name. [R. 4].

- 1 -

## I.   BACKGROUND

Petitioner is a thirty-two-year-old native and citizen of Honduras who has been present in the United States since 2022, when he entered the United States as a minor with his minor siblings. [R. 5, ¶¶ 17, 26]; [R 10-1, p. 1]. He has since resided continuously in the United States for approximately twenty-three years. [R. 5, ¶ 27]. During that time, he married a United States citizen and now has three children, all United States citizens. *Id.* ¶ 28.

On or about March 12, 2026, Petitioner was stopped in Louisville, Kentucky for a traffic violation and was ultimately arrested for speeding and driving without a license. *Id.* ¶ 29; [R. 10 1, p. 2]. On March 13, 2026, he was transferred to the custody of ICE. [R. 10-1]. On that same day, the Department of Homeland Security ("DHS") initiated immigration removal proceedings against Petitioner pursuant to 8 U.S.C. § 1229a by filing a Form I-862, Notice to Appear (hereinafter, "NTA"). [R. 10-2]. The NTA charges Petitioner under 8 U.S.C. § 1182(a)(6)(A)(i) and § 1182(a)(7)(A)(i)(I)[2] as being "present in the United States without being admitted or paroled" and being "an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border patrol card, or other valid entry document required by" the INA, [R. 102, p. 4], and further alleges the following:

1.   You are not a citizen or national of the United States;
2.   You are a native of HONDURAS and a citizen of HONDURAS;
3.   You entered the United States at or near UNKNOWN PLACE, on or about unknown date;
4.   You were not then admitted or paroled after inspection by an Immigration Officer.
5.   You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border patrol card, or other valid entry document required by [the INA].

---

[2] The NTA cites to "212(a)(6)(A)(i) of the Immigration and Nationality Act" and "212(a)(7)(i)(II) of the Immigration and Nationality Act." [R. 10-1, p. 5]. The Court will instead use U.S.C. citations throughout for uniformity.

*Id.* at 1.

By way of background, on July 8, 2025, DHS, in coordination with the United States Department of Justice, issued a new policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," which provides that all "applicants for admission" should be detained pursuant to 8 U.S.C. § 1225, rather than § 1226. *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/6JYU-M2SY]. In a reversal of longstanding ICE policy, the change effectively subjects all persons who previously entered the United States without inspection to mandatory detention under § 1225(b)(2)(A), regardless of how long they have been present in the United States or whether they were detained at or near the United States border or other ports of entry. *See id.*

Petitioner does not allege that he requested or was denied a bond redetermination hearing in front of an Immigration Judge (hereinafter, "IJ") pursuant to 8 C.F.R. § 1236. However, he asserts that he has been held "without a constitutionally adequate custody determination," and "[n]o neutral adjudicator has meaningfully evaluated whether his continued detention is justified." [R. 5, ¶ 5]; *see also id.* ¶¶ 33–34.

On April 23, 2026, Petitioner filed before this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 but failed to identify the respondents by name. *See* [R. 1]. The Court therefore permitted Petitioner to amend his petition. [R. 4]. His amended petition was filed on April 24, 2026, alleging violations of the INA and the Fifth Amendment Due Process Clause. [R. 5, pp. 14–15]. Petitioner argues that because he previously entered and resided in the United States before his arrest and detention, his detention is governed by § 1226 of the INA, not § 1225. *See,*

*e.g.*, [R. 5, ¶ 57]. Accordingly, Petitioner argues that he was entitled to a bond hearing before a neutral IJ pursuant to § 1226(a). *See, e.g.*, *id.* ¶¶ 5, 7, 33–34, 39.

Respondents assert that Petitioner's detention is proper under § 1225(b)(2)(A) of the INA because Petitioner qualifies as an "applicant for admission," a category of noncitizens subject to mandatory detention pending removal proceedings. [R. 10, p. 1]. Respondents "rel[y] on and incorporate by reference the legal arguments from the briefs the government filed with the Sixth Circuit Court of appeals in the four §§ 1225/1226 appeals" currently before that Court. *Id.* at 3. Those cases are *Lopez-Campos v. Raycraft*, Case No. 25-1965 (6th Cir. Oct. 27, 2025); *Alvarez v. Noem*, Case No. 25-1969 (6th Cir. Oct. 27, 2025); *Contreras-Cervantes v. Raycraft*, Case No. 25-1978 (6th Cir. Oct. 28, 2025); *Pizarro Reyes v. Raycraft*, Case No. 25-1982 (6th Cir. Oct. 29, 2025). Respondents concede that the "relevant facts in all four matters on appeal" are "similar to the relevant facts in this matter" and the only "relevant legal question" is whether the Petitioner is detained under Section 1225(b)(2)(A) or Section 1226. [R. 10, p. 3].

In his prayer for relief, Petitioner seeks, among other things, his immediate and unconditional release and an injunction enjoining Respondents from re-arresting or otherwise detaining Petitioner "absent a warrant and unless Petitioner commits a criminal offense, fails to attend a properly noticed immigration hearing, or is subject to a final removal order pursuant to 8 U.S.C. § 1231." [R. 5, pp. 16–17]. In his petition, he also argues that, while the Court should grant immediate release, it should alternatively "require a prompt bond hearing." *Id.* at 2.

## II.    LEGAL STANDARD

Habeas relief is available where a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The right to petition for a writ of habeas corpus is "'available to every individual detained within the United States,'" *Montiel v.*

*Raycraft*, No. 1:25-cv-1610, 2026 WL 32076, at *1 (W.D. Mich. Jan. 6, 2026) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)), including "non-citizens in immigration-related matters." *Id.* (citations omitted). The petitioner seeking habeas relief bears the burden of proving by a preponderance of the evidence that his detention was unlawful. *See Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022) (citation omitted).

Section 2241 confers jurisdiction on federal courts to review noncitizens' claims challenging the constitutionality of their detention during the pendency of removal proceedings. *See Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail."). Although § 1226(e) provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any [noncitizen] or the . . . denial of bond or parole," the Supreme Court has recognized that district courts retain jurisdiction to hear habeas petitions concerning issues that are collateral or ancillary to removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) ("Section 1226(e) does not preclude challenges to the statutory framework that permits [an] alien's detention without bail." (quotations omitted) (citing *Demore*, 538 U.S. at 517)). Because Petitioner challenges the statutory and constitutional validity of his detention, and does not directly challenge his removal proceedings, the court finds that it has jurisdiction to consider Petitioner's claims.

## III.  ANALYSIS[3]

### A.  Section 1225 Versus Section 1226

The relevant facts are undisputed. Concerning the legal arguments, Respondents' argument regarding the applicability of Section 1225 versus Section 1226 is nearly identical to its argument in *Martinez-Elvir v. Olson*, 807 F.Supp.3d at 735–42, and therefore the Court fully incorporates by reference its reasoning and decision in that action. There, this Court held that "the statutory text, context, and legislative history of Sections 1225 and 1226, considered alongside longstanding federal immigration practice, renders § 1225(b)(2)(A) inapplicable" to the petitioner's detention. *Id.* at 742. Although this Court's decision contrasted with the BIA's holding in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (2025), this Court cited in support (1) the Supreme Court's decision in *Loper Bright*, 603 U.S. at 413, alongside the ambiguity of § 1225; (2) "the statutory context, scheme, and text of § 1225"; and (3) numerous other federal courts concurring with its interpretation of § 1225. *Id.* at 741–42.

Respondents' incorporated brief cites to several nonbinding district courts, and one BIA decision, to support their interpretation.[4] [R. 10, p. 3]; [R. 10-3]. However, the Court is not persuaded by these decisions for the reasons previously explained in *Marintez-Elvir*, 807 F.Supp.3d at 735–42, incorporated here by reference.

---

[3] Neither party has asserted any exhaustion-related arguments, [R. 5], [R. 10], and no applicable statute or rule mandates exhaustion, *see Martinez-Elvir v. Olson*, 807 F.Supp.3d 725, 733, 733 n.4 (W.D. Ky. 2025) (noting no awareness of statutes or regulations requiring exhaustion). However, because many decisions in similar cases by district courts within the Sixth Circuit discuss this principal, the Court incorporates its analysis on exhaustion of remedies from a previous case, *Marintez-Elvir*, 807 F.Supp.3d at 732–35, and the Court waives the exhaustion requirement for the same reasons stated therein.

[4] None of the cases cited by the United States are controlling authority within the Sixth Circuit. Further, the BIA is neither binding, nor should be viewed as persuasive authority, on any district court. *See Loper Bright*, 603 U.S. at 413 ("[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.")

The Court's holding in *Martinez-Elvir* aligns with the Second Circuit's recent unanimous opinion in *Cunha v. Freden*, --- F.4th --- 2026 WL 1146044 (2d Cir. Apr. 28, 2026), which discusses the identical Section 1225 vs. Section 1226 issue raised here. There, the Second Circuit held that the

> government's attempt to muddy these textually clear waters defies the statute's context, structure, history, and purpose; contradicts the Supreme Court's dicta in Jennings and longstanding Executive Branch practice; and its interpretation of the statute raises serious constitutional questions that should be avoided even if the statutory language were ambiguous.

*Id.* at *23.

> In sum, the plain meaning of "seeking admission" in Section 1225(b)(2)(A)— presently pursuing lawful entry into the United States—is not undermined by any of the other statutory provisions to which the government retreats to find support. Therefore, we find no basis to justify departing from the unambiguous meaning of the text, under which Petitioner is not subject to mandatory detention, because he is not "seeking admission" under Section 1225(b)(2)(A).

*Id.* at *13. Judge Cabranes, concurring, further wrote that "no one can seriously contend that Petitioner is 'seeking admission' twenty-one years after he entered the country. The words, properly defined, are clear. That ought to be the end of the matter." *Id.* at *24 (Cabranes, J. concurring).

As Judge Jennings noted in a recent decision, the Second Circuit noted that divided panels in two other circuits have agreed with the government, *see Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026), while the Seventh Circuit has preliminarily reached the same conclusion as the Second Circuit in reviewing a stay motion, *see Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025). *See Lin v. Woosley*, No. 4:26-CV-280-RGJ, 2026 WL 1180452, at *2 (W.D. Ky. Apr. 30, 2026). This Court recognizes the present circuit split. However, on May 11, 2026, the Sixth Circuit issued a decision in *Lopez-Campos v. Raycraft*, -- F. 4th --, 2026 WL 1283891 (6th Cir. May 11, 2026).

In that decision, the Sixth Circuit held that 8 U.S.C. § 1225(b)(2)(A) does not apply to noncitizens who entered the country without inspection and resided in the interior of the United States prior to their initial detention by the United States Immigration and Customs Enforcement. *See, e.g.*, *Lopez-Campos*, 2026 WL 1283891, at *3–11. Accordingly, the Court finds § 1226, not § 1225, applies to Petitioner's detention.

### B.  Due Process

As stated, Petitioner is detained under § 1226. Respondents contend that because Petitioner is properly detained under § 1225, not § 1226, he has not been deprived of any "due process." [R. 10, pp. 4–6]. Otherwise, Respondents do not substantively address the alleged violation of due process raised by Petitioner. *Id.* Because the Court found that Petitioner's detention is guided by § 1226, the Court must determine whether his continued detention pursuant to § 1226 is in violation of his right to due process of law.

Petitioner presently remains in ICE custody, to the best of this Court's knowledge. Petitioner alleges that, and the Court must determine whether, his continued detention violates his Fifth Amendment right to due process. The Fifth Amendment's Due Process Clause extends to all persons, including non-citizens, regardless of their immigration status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *see also Trump v. J.G.G. et al.*, 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (citation and quotations omitted)). In determining whether a civil detention violates a detainee's due process rights, the *Mathews v. Eldridge* three-part balancing test applies. 424 U.S. 319 (1976). Under that framework, the Court weighs three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute

procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335. Respondents argue that because Petitioner has received notice of the charges against him[5], he has not been denied due process. [R. 10, p. 4]. The Court will consider Respondent's argument in light of the three *Mathews* factors.

### 1. Private Interest

Respondents do not dispute Petitioner's significant private interest in not being detained. *See* [R. 10]. "[T]he interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, (2004). In fact, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In assessing the liberty interest at stake, courts can consider the detainee's condition of confinement in order to determine if those conditions are indistinguishable from criminal incarceration. *Martinez v. Noem*, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025).

Here, Petitioner is being held at the Oldham County Detention Center, where he is separated from his family and community. *See, e.g.*, [R. 5, ¶¶ 27–28]. The fact that Petitioner has already received notice of the charges against him does not diminish Petitioner's current interest—being free from allegedly unlawful detention. Therefore, the Court finds that the first *Mathews* factor strongly favors Petitioner. *See Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *6 (W.D. Ky. Sep. 19, 2025); *Singh v. Lewis*, No. 4:25-CV-96-RGJ, 2025 WL

---

[5] Respondents state, "Petitioner is receiving the process Congress provided, including notice of the relevant charges of removability and a hearing before an immigration judge." [R. 10, p. 4]. However, there is no evidence or allegation that Petitioner requested or received a bond hearing. *See* [R. 12, p. 7 ("... Petitioner's detention has never been subjected to any neutral custody determination. . . .")].

2699219, at *4 (W.D. Ky. Sep. 22, 2025); *Patel v. Tindall*, No. 3:25-CV-373-RGJ, 2025 WL 2823607, at *5 (W.D. Ky. Oct. 3, 2025).

### 2. Risk of Erroneous Deprivation

The second *Mathews* factor addresses the risk of erroneous deprivation of Petitioner's liberty interest due to Petitioner's continued detention without any determination as to his/her flight risk or danger to the community. *See* 424 U.S. at 335. The Court here finds that this factor also weighs in Petitioner's favor; because Petitioner has not received a bond hearing before a neutral IJ, there is no evidence in the record that Petitioner is a flight risk or a danger to the community. *See Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 495 (S.D.N.Y. 2025). Therefore, the risk of erroneously depriving Petitioner of physical freedom is impermissibly high. *See Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771, 786 (E.D. Mich. 2025) ("[T]he risk of erroneously depriving [the petitioner] of his freedom is high if the IJ fails to assess his risk of flight and dangerousness."). Without the bond hearing before a neutral IJ that he is entitled to under § 1226(a), Petitioner will never be able to present the compelling reasons that he is neither a flight risk nor a danger.

### 3. Respondents' Interest

The third and final *Mathews* factor pertains to Respondents' interest in the procedure at issue, as well as the financial or administrative burdens associated with alternative procedures. *Mathews*, 424 U.S. at 335. The Court nevertheless recognizes the Respondents' strong interest in ensuring that noncitizens—criminal or otherwise—do not harm citizens or the community and that they appear for future immigration proceedings. These interests manifest in the IJ's bond determination where the IJ assesses a noncitizen's danger to the community and flight risk. *See Sampiao*, 2025 WL 2607924, at *12 ("The government does, indeed, have a legitimate interest in

ensuring noncitizens' appearance at removal proceedings and preventing harms to the community."). A "routine bond hearing" before an IJ, however, imposes a "minimal" burden on Respondents, as these procedures are already well-established. *Hyppolite v. Noem*, 2025 WL 2829511, at *15 (E.D. N.Y. Oct. 6, 2025). Therefore, "existing statutory and regulatory safeguards adequately serve the governmental interest in promoting public safety." *Günaydin v. Trump*, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025). Accordingly, the Court finds the third *Matthews* factor also favors Petitioner.

As a whole, then, all three *Mathews* factors weigh in favor of Petitioner. The Court agrees with Petitioner that his detention under § 1225's mandatory detention framework violates his due process rights.

Lastly, the Court addresses Petitioner's argument that immediate release is the appropriate remedy. *See, e.g.*, [R. 5, pp. 12–14]. Here, the Court has determined that Petitioner's detention is governed by § 1226, and as a result, he is entitled to a bond hearing before a neutral IJ. The Court will therefore order Respondents to either provide such a bond hearing *or* release Petitioner.

## IV. CONCLUSION

For the above-stated reasons, the Court will grant Petitioner's Petition and order that Respondents either release him or imminently provide a bond hearing before a neutral IJ. Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Petitioner's First Amended Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, [**R. 5**], is **GRANTED**.

2.  Respondents **SHALL** immediately release Petitioner or, in the alternative, provide him with a bond hearing before a neutral IJ under 8 U.S.C. § 1226(a) **within five (5) days** of the date of this Order.

3.  Respondents are **ENJOINED** from pursuing detention on the basis of 8 U.S.C. § 1225(b)(2)(A).

4.  Respondents **SHALL** file a Status Report with this Court on or before **May 19, 2026** to certify compliance with this Order. The Status Report **SHALL** include: (1) if and when Petitioner's bond hearing occurred; (2) if bond was granted or denied; and (3) if denied, the reasons for the denial.

This the 12th day of May, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

- 12 -